# STATE OF MICHIGAN

# COURT OF APPEALS

---

MICHELLE BURKHARDT,

        Plaintiff-Appellant/Cross-Appellee,

v

CITY OF LANSING and LANSING POLICE
DEPARTMENT,

        Defendant-Appellees/Cross-
Appellants.

UNPUBLISHED
June 9, 2015

No. 319853
Ingham Circuit Court
LC No. 10-000466-CL

---

Before: RIORDAN, P.J., and DONOFRIO and BECKERING, JJ.

PER CURIAM.

Plaintiff appeals by right from a judgment issued following a jury verdict of no cause of action with respect to plaintiff's retaliation claim pursuant to the Michigan Civil Rights Act (MCRA), MCL 37.2101 *et seq.*, and the finding that, while she suffered sexual harassment under the act, she was not entitled to damages arising from this claim. Defendants have filed a cross-appeal, providing an alternate ground for affirming the jury's determination that plaintiff is not entitled to relief with respect to her sexual harassment claim. We affirm.

## I. FACTS

Plaintiff, a Lansing police officer, has been employed by defendant Lansing Police Department since 1997, with the exception of a short period of time between 2012 and 2013. In 2005, she and another officer, Paula Paschal, responded to a domestic relations complaint where the two alleged they were refused backup assistance from other officers. Plaintiff maintained that in 2007 and 2008 she was the target of a number of "pranks" from her fellow officers and, after she testified in 2008 at Paschal's workers' compensation hearing, she was informed by an attorney employed by defendant City of Lansing that the refusal to provide backup was based on animosity toward her. Plaintiff had a conversation with a Lansing police lieutenant about the stress caused by these events, and he referred her to an internal employee assistance program (the CARES program), which she participated in. She had also been prescribed Xanax by her primary physician.

On September 19, 2008, members of the department received an e-mail from then Lansing Police Chief Mark Alley that Paschal's "civil claims" had been settled. Shortly

thereafter, plaintiff sent a department-wide e-mail response that stated, "Nice slap in my face don't you think?" Plaintiff testified that the department's legal advisor, Michael Mathis, told her he needed to talk to her. Later, during a conversation in Mathis's office, he performed a number of actions, such as lubricating a rubber glove he had placed on his hand, so as to give her the impression that he planned to perform a rectal exam, and plaintiff became highly uncomfortable and left his office. Eventually, disciplinary actions were taken against Mathis.

After reportedly suffering stress from the Mathis incident, and using her personal and sick time for a six-week leave of absence, plaintiff filed a workers' compensation claim and received her leave time back, as well as payment of doctor and other copays stemming from the incident. At the city's behest, Dr. Gustav Minjun Lo performed an independent medical examination of plaintiff and authored a report in December 2008, in which he expressed the opinion that plaintiff was fit for duty. In early July 2009, plaintiff self-reported a change in her medications in accordance with department policy. Plaintiff was placed on administrative leave on July 9, 2009, and was required to undergo a fitness for duty evaluation from Sparrow Environmental Health Services. She was referred to Robert J. Fabiano, Ph.D., who performed a psychological evaluation on July 22, 2009, and determined that plaintiff was unfit for duty. Plaintiff was placed on light duty assignment by then Lansing Police Captain Teresa Szymanski.

In January 2010, plaintiff informed a coworker by e-mail about problems she was having with her marriage; the e-mail also suggested that plaintiff's husband had abused the couple's children by disciplining them too roughly. The coworker told human resources, and Human Resources Health and Wellness Administrator Amy Fraser met with plaintiff on January 19, 2010, to tell her that Child Protective Services (CPS) was being notified. Once again, plaintiff was placed on administrative leave with pay. In March 2010, plaintiff submitted a second workers' compensation claim and requested an administrative hearing, and in April 2010, she filed the instant suit raising claims of sexual harassment, gender discrimination, and retaliation for participating in a sexual harassment hearing, and a claim under the Whistleblowers' Protection Act, MCL 15.361 *et seq*.

Plaintiff was again referred to Fabiano in March 2010, who once again found her unfit for duty. Plaintiff's leave was converted from paid administrative leave to personal medical leave effective May 3, 2010. Fraser testified that a letter was sent to plaintiff in August 2010 informing her that she could get a doctor's statement saying she was cleared to come back to work. However, an October 22, 2010 letter from plaintiff's psychiatrist stated that returning to work would be deleterious to her.

Plaintiff underwent another psychiatric evaluation by Dr. Lo, who authored a May 31, 2011 report in which he stated that plaintiff was fit to work. While this report was furnished to defendants, Fraser testified that it "was done for the sole purpose of the workers' compensation claim." Plaintiff was terminated from employment on March 12, 2012, but she was reinstated in June 2013 following a grievance procedure.

Following the submission of proofs, defendants moved for summary disposition. The trial court dismissed plaintiff's gender discrimination claim, Whistleblowers' claim, and claim against then Lansing Police Chief Michael Yankowski. The jury found liability on the sexual

harassment claim, but awarded $0 in damages. The jury found no cause of action on the retaliation claim. The trial court later denied plaintiff's motion for a new trial.

## II. REFUSAL TO EXCUSE JUROR

Plaintiff first argues that she was denied her right to due process when the trial court refused to excuse a juror who, during the course of trial, revealed that he had a bias against Hispanics. Plaintiff has Hispanic heritage. She does not challenge the partiality of any of the remaining jurors, who are presumed to have been impartial. See *People v Miller*, 482 Mich 540, 550; 759 NW2d 850 (2008).

Regardless of the merit of plaintiff's initial challenge for cause, she cannot show that she is now entitled to a new trial. "[A] grant of a new trial is governed by MCR 2.611(A)(1). The rule clearly requires that a party seeking a new trial establish that substantial rights were materially affected." *Bynum v ESAB Group, Inc*, 467 Mich 280, 286; 651 NW2d 383, 387 (2002). Here, because the challenged juror was excused before deliberations began and was not shown to have tainted the deliberations of any of the remaining jurors, plaintiff cannot show that her rights were materially affected. Therefore, plaintiff has not shown that she is entitled to relief.

## III. JUDICIAL BIAS

Plaintiff next claims that her rights to due process were violated due to judicial bias. Because plaintiff never raised the issue of judicial bias at the trial court, the issue is not preserved. We review unpreserved issues for plain error affecting plaintiff's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

A trial judge may be disqualified where, in relevant part, the "judge is biased or prejudiced for or against a party or attorney," or where the "judge, based on objective and reasonable perceptions, has either" a serious "risk of actual bias impacting the due process rights of a party" or has "failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct." MCR 2.003(C)(1). To establish bias or prejudice, a party "must overcome a heavy presumption of judicial impartiality." *Cain v Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996). "[D]isqualification for bias is only constitutionally required in the most extreme cases." *Id*. at 498.

In support of this contention, plaintiff points to a number of alleged errors, which we will address in turn.

### A. TESTIMONY CONCERNING PLAINTIFF'S CONCURRENT WORKERS' COMPENSATION CLAIM

Plaintiff first maintains that the introduction of evidence concerning her concurrent workers' compensation claim was erroneous because generally it is not acceptable to introduce evidence concerning insurance coverage.

As noted by defendants, plaintiff's counsel first raised the issue in opening statements by discussing plaintiff's workers' compensation claims and Dr. Lo's reports. Plaintiff's counsel also specifically used the workers' compensation claim as evidence that plaintiff suffered damages from Mathis's actions, and also to argue that defendant's retaliated against her for filing the claim. It is fundamental that "[a] party is not allowed to assign as error on appeal something which his or her own counsel deemed proper [in the trial court] since to do so would permit the party to harbor error as an appellate parachute." *Dresselhouse v Chrysler Corp*, 177 Mich App 470, 477; 442 NW2d 705 (1989); see also *Lewis v Legrow*, 258 Mich App 175, 210; 670 NW2d 675 (2003) ("It is settled that error requiring reversal may only be predicated on the trial court's actions and not upon alleged error to which the aggrieved party contributed by plan or negligence"). Plaintiff cannot claim judicial bias based on an evidentiary decision that was assented to by her attorney.

Taking a position contradictory to the above, plaintiff also appears to maintain that she has demonstrated that she was denied a fair trial due to judicial bias because her counsel was not able fully to question her about her reasons for raising her workers' compensation claims and that this may have prevented the jury from awarding damages for sexual harassment.

A trial court may restrict the presentation of relevant evidence if, among other reasons, it could lead to juror confusion. MRE 403. Reviewing the challenged actions by the trial court, it is evident that the court was attempting to avoid confusing the jurors with what was, on the part of all parties, conflicting stances concerning plaintiff's ability to perform her duties. While the trial court prevented plaintiff from explaining her reasoning in filing both claims, we read the court's subsequent explanation as an intention to disallow an exploration of a marginally relevant area which either could have unanticipated repercussions in the workers' compensation claim or could possibly lead to an allegation that plaintiff was presenting perjured testimony in the instant case. We see no abuse of discretion in the court's handling of the issue, or any evidence of untoward bias against plaintiff.[1]

## B. EX PARTE COMMUNICATIONS

Plaintiff also maintains that the trial court's improper ex parte communications with defense counsel during the case evaluation sanction portion of the proceedings should leave this Court "with the overall impression and attitude of the trial court tainted the jury's view of the proceedings." The conversation of which she complains basically consisted of a request from the trial court's judicial assistant for an itemized statement. Plaintiff acknowledges that this conversation, such as it was, did not occur during the presence of jurors. It thus could not have had any effect on the outcome of the trial.

## C. OBJECTIONS DURING CLOSING ARGUMENTS

---

[1] Having found no error, we need not consider plaintiff's speculative assertion that the trial court's decision to limit her testimony likely resulted in the failure to award damages.

Plaintiff claims error concerning the trial court's decision to sustain defendants' objection to her counsel's argument at closing that she had been disparately treated due to her gender. However, plaintiff's gender discrimination claim had already been dismissed, and plaintiff has not shown that the trial court's decision to limit closing arguments to the evidence presented and the theories available for recovery constituted either error or bias.

Plaintiff also maintains that the trial court improperly sustained a defense objection and gave a corrective instruction concerning "a recitation of information possessed by Mr. Mathis." When plaintiff's counsel began to discuss how Mathis allegedly claimed that he had information on plaintiff starting back in spring of 2008, defense counsel objected on the ground that Mathis did not testify. The trial court sustained the objection, telling the jury, "there was no testimony about statements or what statements may have been that were made by Mr. Mathis. I think the testimony was that some statements were made to then Captain Yankowski but not the substance of those statements." Plaintiff maintains that counsel's argument was fully supported by testimony from both plaintiff and Yankowski, but provides no citation to where this occurred. Plaintiff has thus not shown that the trial court erred in sustaining the objection or that the ruling evidenced bias on the part of the trial court.

## D.  QUESTIONING OF AMY FRASER

Plaintiff argues that that the trial court improperly interrupted her counsel's questioning of Fraser because the sought-after testimony was relevant as to a dispute between Fraser and then Chief Szymanski regarding whether and when the chief was informed about Dr. Lo's 2011 report. However, as defendants note, the actual sustained objection concerned the receipt of Dr. Fabiano's report and whether it, not the report from Dr. Lo, was placed in plaintiff's personnel file or her medical one.

## E.  SUMMARY

After concluding that none of the raised issues had any merit, plaintiff's argument necessarily fails that these adverse rulings evidenced judicial bias. We note that even if the trial court did err in any of these instances, this would not alter our resolution of this issue.

> Judicial rulings, as well as a judge's opinions formed during the trial process, are not themselves valid grounds for alleging bias "unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." Comments that are critical of or hostile to counsel and the parties are generally not sufficient to pierce the veil of impartiality. [*People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011) (citations omitted); see also *Wayne Co Prosecutor v Parole Bd*, 210 Mich App 148, 155; 532 NW2d 899 (1995), quoting *Mahlen Land Corp v Kurtz*, 355 Mich 340, 350; 94 NW2d 888 (1959) (stating that "'[r]epeated rulings against a litigant, no matter how erroneous, and how vigorously and consistently expressed, are not disqualifying'").]

After our review of the record, we conclude that there were no circumstances that demonstrated the presence of a deep-seated favoritism or antagonism that would make fair

judgment impossible. Accordingly, we conclude that there is no merit to plaintiff's contention of judicial bias.

## IV. DAMAGES FOR HARASSMENT CLAIM

Plaintiff next argues that she is entitled to a new trial or to additur based on the jury's decision to award her no damages after finding that she had proven her claim of sexual harassment. This Court reviews for an abuse of discretion a trial court's decision not to grant a new trial, *Kelly v Builders Square, Inc*, 465 Mich 29, 34; 632 NW2d 912 (2001), and to deny a motion for additur, *Arnold v Darczy by Darczy*, 208 Mich App 638, 639; 528 NW2d 199 (1995).

A motion for new trial is supportable when, for example, an irregularity in the proceedings denied a party a fair trial, the verdict was "clearly or grossly inadequate or excessive," or the verdict was against the great weight of the evidence. See MCR 2.611(A)(1)(a), (d), (e).

> When a party challenges a jury's verdict as against the great weight of the evidence, this Court must give substantial deference to the judgment of the trier of fact. If there is any competent evidence to support the jury's verdict, we must defer our judgment regarding the credibility of the witnesses. The Michigan Supreme Court has repeatedly held that the jury's verdict must be upheld, "even if it is arguably inconsistent, '[i]f there is an interpretation of the evidence that provides a logical explanation for the findings of the jury.'" "'[E]very attempt must be made to harmonize a jury's verdicts. Only where verdicts are so logically and legally inconsistent that they cannot be reconciled will they be set aside.'" [*Allard v State Farm Ins Co*, 271 Mich App 394, 406-407; 722 NW2d 268 (2006) (citations omitted; alterations by *Allard* Court).]

Likewise," [t]he proper consideration in granting or denying additur is whether the jury award is supported by the evidence." *Arnold*, 208 Mich App at 640.

"It is the sole province of the jury to determine the weight of the evidence and credibility of the witnesses. [This Court] may not interfere with that judgment." *Allard*, 271 Mich App at 408. Consistent with this responsibility, a jury is free to accept or reject a plaintiff's testimony regarding damages. *Joerger v Gordon Food Serv, Inc*, 224 Mich App 167, 172; 568 NW2d 365 (1997). However, a verdict is inadequate if the jury ignored uncontroverted damages. *Burtka v Allied Integrated Diagnostic Servs, Inc*, 175 Mich App 777, 780; 438 NW2d 342 (1989).

To make out her prima facie case for a hostile work environment sexual harassment claim under the MCRA, plaintiff was required to establish five elements:

(1) the employee belonged to a protected group;

(2) the employee was subjected to communication or conduct on the basis of sex;

(3) the employee was subjected to unwelcome sexual conduct or communication;

(4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and

(5) respondeat superior. [*Radtke v Everett*, 442 Mich 368, 382; 501 NW2d 155 (1993), citing MCL 37.2103(h), MCL 37.2202(1)(a).]

Because the only theory of recovery found viable by the jury was her sexual harassment allegations, plaintiff was required to provide a nexus between the tortious action and the damages she claims to have suffered in order to recover monetary damages. See, e.g., *Haliw v Sterling Hts*, 464 Mich 297, 310; 627 NW2d 581 (2001); *Kewin v Mass Mut Life Ins Co*, 409 Mich 401, 419; 295 NW2d 50, 55 (1980).

To support her claim that additur or a new trial is warranted, plaintiff maintains, "Even if wage loss was not caused by the harassment, plaintiff clearly testified to damage in terms of stress, weight gain, loss of intimacy, other physical problems related to stress, forced medical and psychological examinations, and financial complications including, but not limited to, loss of her home to foreclosure and bankruptcy." Plaintiff also states that she had an overall wage loss over the course of the events of approximately $225,000. However, while plaintiff may have suffered damages from defendants' actions overall, the jury did not find that her retaliation claim had merit. Plaintiff does not provide anything other than a general assertion that these damages are related to Mathis's sexual harassment rather than the other actions plaintiff complains of. A party may not merely announce a position and leave it to the court to discover and rationalize the basis for the claim. *Groves v Dep't of Corrections*, 295 Mich App 1, 11; 811 NW2d 563 (2011).

Moreover, the record does not contain uncontroverted facts supporting noneconomic damages arising from the sexual harassment, such that it would lead to a finding that the jury ignored uncontroverted damages. See *Joerger*, 224 Mich App at 172. Further, "[t]here is no legal requirement that a jury award damages simply because liability was found." *Id*.

## VI. RETALIATION CLAIM

While plaintiff's arguments are not entirely clear, she appears to maintain that the trial court should have granted her motion for a new trial on her retaliation claim because the verdict was against the great weight of the evidence.

This Court has interpreted the retaliation provision of the [MCRA], MCL 37.2701(a), to require that a plaintiff prove a prima face case by showing:

(1) that the plaintiff engaged in a protected activity, (2) that this was known by the defendant, (3) that the defendant took an employment action adverse to the plaintiff, and (4) that there was a causal connection between the protected activity and the adverse employment action.

To establish causation, the plaintiff must show that his participation in activity protected by the [MCRA] was a "significant factor" in the employer's adverse employment action, not just that there was a causal link between the two. [*Barrett v Kirtland Cmty Coll*, 245 Mich App 306, 315; 628 NW2d 63 (2001) (quotation marks and citations omitted).]

Plaintiff points to a number of instances of alleged retaliation. In response, defendants argue, in part, that some of the actions taken by plaintiff were not "protected" and that having her undergo psychological or medical evaluations or placing her on leave are not materially adverse. These arguments are, for the most part, unpersuasive.

Regardless of whether plaintiff could meet her burden of establishing a prima facie claim, she has not shown that the jury verdict was against the great weight of the evidence. Although actions by various police supervisory personnel can be seen as harassment in retaliation for testifying for Paschal, they can also reasonably have been viewed as the implementation of department protocol in response to plaintiff's mental health issues that pre-existed her decision to testify. As discussed above, evidence was presented that plaintiff had a mental health condition at least as early as 2007 that required her to take medication. Evidence was also presented that she met with a Lansing police lieutenant about stress concerning the statement that the other officers' "no-backup" decision in 2005 was related to animosity toward her rather than Paschal, and that this in turn led to her enrollment in the CARES program and additional counseling. And while plaintiff criticizes the actions taken after she informed a coworker of her husband's actions in January 2010, absent some conspiracy not proven at trial, she cannot show that her coworker's decision to report this suspected abuse had anything to do with plaintiff's protected activities.

Likewise, although the referral to Dr. Lo and the subsequent referrals to Dr. Fabiano could have been viewed as part of a plan to retaliate against plaintiff, the evidence presented also suggests a more pedestrian rationale, i.e., in the case of Dr. Lo, the goal was to rebut plaintiff's claim that she was entitled to workers' compensation benefits, and in the case of Dr. Fabiano's first evaluation in 2009, the referral came in response to plaintiff's self-reported medical condition and her change of medication. Evidence was also presented that, even in late 2010, plaintiff's own psychiatrist stated that returning to work would be deleterious to her and that Fabiano should re-evaluate whether she could return to duty.

In short, given the conflicting evidence, a reasonable jury could have found that plaintiff failed to establish that the actions by defendants' employees were retaliation for her protected activity. Accordingly, plaintiff has not shown that the jury's decision was against the great weight of the evidence. Given our resolution of this issue, we need not reach defendants' alternate rationale for affirmance presented on cross-appeal.

Affirmed. Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Michael J. Riordan
/s/ Pat M. Donofrio
/s/ Jane M. Beckering